and it may have pleased the court. I'm Karen Landau and I represent Henry Benson. So I think the principal question here today is whether the curative instruction, whether any curative instruction can be sufficient to mitigate the prejudice when a law enforcement witness gives testimony that the defendant admitted to committing an element of the offense. In other words, it fully, the admission that the law enforcement agent testified to in this case was that the defendant said he had the shotgun for defense against robbery. And that was conclusive of guilt of the 924C because the gun was there and there was clearly drug trafficking going on. And in fact, the drug trafficking wasn't even, you know, there was cross-examination, but it really wasn't contested. He was making party pills, which were mostly bunk, but there was methamphetamine in them and there was enough evidence. I get your point, but it's a big hill to climb. And in this particular case, you've got Mr. Benson's counsel who elicited the alleged admission the second time, and he also was able to cross-examine Neuring on the alleged admission. What's wrong with that? I mean, obviously it's not an ideal way to conducting, but to have a trial, that's a big deal. Why weren't these remedial steps enough? Again, I think it's, it comes down to the evidence. I think there's several points. First, the evidence was very prejudicial. There's very little that's more prejudicial than the idea that the defendant admitted doing something. That's a very, very prejudicial thing. But if he admitted it a second time, it's on counsel. Well, he didn't admit it, and counsel, I mean, there was a lot of things that went on there. I think part of it is the context in which this happened. I think the first, so the first thing was the government introduced the evidence, or I would say Agent Neuring decided to embellish his, he gave a little bit embellished, some embellished testimony. So that's the first thing. So then, and then during that time, it came up whether it became, because based on his statements, which were nowhere in the discovery and nowhere in the reports, it be, there was an issue about whether there was a Miranda violation. So counsel explored that and decided that he wasn't going to pursue that because it didn't appear that there was a, wasn't, you know, wasn't clear enough. Or, I mean, counsel did it. I wasn't trial counsel, so I can't answer as to counsel's motivations. I mean, then he said, well, okay, the best I'm going to get. Then before, now mind you, the government is still standing on Agent Neuring's testimony. So the counsel says, well, I'm going to cross-examine him, you know, and then he does cross-examine him. The next day, the government moves to strike the testimony. So that, you know, yes, it's, you're right, Your Honor, it's not ideal. And, and, um. Isn't that powerful enough that the government's not standing behind the testimony? Why, why do we need something more than that? Ah, because, because then, because Neuring got to say the testimony twice. Because then he gets on the stand and he testifies as an expert. And he has so much credibility. And mind you, this is a witness who's really almost the whole case. I mean, there's forensic chemists and there's, you know, a little bit of this and that. But really, he's the whole case. He testifies every day of the trial. And, you know, he, he says, well, he says, you know, in, you know, when, when we see guns, we think, we find, we believe they're related. Because, you know, and then he goes into this explanation about why the shotgun is a tactical weapon and this and that. And, and there is a, and I will address that briefly in, in, subsequently in this argument, hopefully. But, but I think that, that's the problem. And, you know, Your Honor, I'm not saying there's not enough evidence to convict him. I didn't argue sufficiency. What I'm saying is in this case, the evidence wasn't overwhelming. We have this shotgun. It's shoved way under shelf. They have to use a flashlight to see it. It's covered with dust and hair. You know, they admit that it's there. Now, mind you, my client runs into the bathroom. Does he grab for the gun? No, he doesn't grab for the gun. He runs in the bathroom, shuts himself in the bathroom, and then he comes out and he surrenders. So, you know, he, there was evidence, too, that he, you know, for example, he, you know, they, they followed him. They saw him meet with the, the, the guy, so Agent Naring was buying, you know, party pills from this fellow, Ruiz, and they managed to identify my client as the source. There's no evidence he carried a gun. There's no evidence they found, you know, he wasn't bringing a gun. So is your argument that the reason why the curative instruction doesn't work here is because the evidence was not as strong as it could be? Yes, that's part. No, the evidence is, what my argument is, is that the, the stricken evidence was very, very prejudicial. And the evidence that he possessed the gun in relation to a drug, drug trafficking offense was not overwhelming. And I think that's the right, I think that's the right call in this case. I mean, you know, I recognize it's a big held account. Well, the point, though, any time you strike, I mean, usually it's prejudicial. So I just don't understand what makes this case unique than every other time that we affirm the use of curative instructions. Because, again, it's an admission. And if you look at the cases cited by the government, you know, like the, the, now I can't think of the name of the case, but there's one case where the government cites it, and, and it's, you know, this Court said, well, the curative instruction was enough. Well, it was a, it was a brief comment by a witness that the defendant, that I think that she was afraid of the defendant or she thought the defendant was dangerous. And it was stricken, and they went on, and that was it. This was, again, this was testimony from the case agent, the major witness in the case, and he testified that my client said, I had the gun because I was afraid of being robbed. That's, that's pretty conclusive. Again, it's, it's, it's not just a, if believed, it's conclusive. And it was parroted by the expert testimony. So it makes it really hard to disregard testimony when it's repeated in another way. I think that's a very strong message. Do you have any case that would be on all fours with this? I, I'm, I'm not aware of any. I mean, obviously, we're human beings. Humans are imperfect. Trials are imperfect. But we're dealing with an abuse of discretion standard here. The judge struck the testimony, instructed the jury. We have long held that juries are deemed to have understood the instruction. We've all heard cases before where you have experts testifying about how drug dealers protect themselves. I mean, I probably heard 50 cases involving that, and it's been upheld in almost every case. So what I'm struggling with, I get your point about it's not fair, in quotes. But to overturn the trial, to have a mistrial. I'd like to see some case law that backs you up to your position. Well, Your Honor, these are, these are factual matters. There's often not case law on a factual point. Okay, but you don't have any case that's factual. I don't, you know, I have a case that's on all fours. The closest that, but I can tell you, you know, this is, it, it is really a case where, and as I said in the brief, you know, the, the agent threw a skunk into the jury box and then said, oh, well, let's not, let's pretend it doesn't smell. You know, and the I mean, the other thing I would add, and this is, this is sort of a, this is a, this is on the, the expert testimonial argument. So, I think it's quite troubling that we have, you know, given the prevalence. I mean, people own guns all over the United States. It's a, it's a right. You have a right to own a gun. So, how is something so commonplace appropriate for an expert to testify that when we see guns and drugs together, the gun is possessed during an, you know, for the purpose of, of the drugs? I mean, this is either, I mean. Well, doesn't that cut the other way? Like, it's such an obvious inference to make that you're right, you don't need an expert to say it, but then, like, you don't need any evidence, frankly, because a jury could say, you put guns and drugs together, they're used for that purpose. Well, that's right. That's right. But when you have an expert saying it, it's, it's, again, it becomes a con, almost conclusive, Your Honor. And I, I question whether that's, that's an appropriate use. I, I would say it's almost harmless then, even if it is an error, because it's just an obvious inference, but. It is or it isn't, but, you know, it's, it's, but again, when you have an expert saying it, and then you have this dusty, hairy gun shoved under a shelf, I mean, really, it's, I would say it invades the province of the jury. If there's no further questions, I, I would, I would reserve my time for rebuttal. You may certainly do so. And even though you're not with the government, you can do that. Very well, so this time we are going to hear from Mr. Pearson, who is with the government. Correct, Your Honor. Very well. Good morning, Your Honors. May it please the Court. Ross Pearson for the government. Mistrials are exceedingly rare and disfavored. And in this case, the district court followed what this court has described as the preferred alternative when it gave a curative instruction, struck Agent Neering's testimony, and instructed the jury to disregard it. And that was not an abuse of discretion. And I want to just turn to the prejudice issue, because I think my colleague suggested this was so overwhelming evidence that there was nothing else that could have met that, met the standard for the government. And that's simply wrong. This case is a common 924c fact pattern, where you have a drug dealer who has a gun strategically located to protect his drugs. And the evidence here showed that Mr. Benson had his gun where it would take him about half a second to reach it. In that same room, he had tens of thousands of dollars worth of pills. He had a money counter, and he had digital scales, and it was right down the hall from where he was manufacturing thousands of pills in his pill press operation. And on top of that, even without the stricken testimony, Mr. Benson admitted post-Miranda that he had possessed that shotgun. He pointed out where it was and directed the agent to the shotgun shells. And then, of course, there's the testimony that drug dealers often keep guns in their residence in case they're going to get robbed. So what's the government's response to your friend's suggestion that when the authorities arrived, he ran into the bathroom rather than grabbing the gun? Was it that there were tens of thousands of pills in there that he was trying to hide and flush down the toilet or something like that? He certainly was trying to flush pills down the toilet. But the answer to that and why he didn't grab the gun was because DEA agents were now loudly knocking at his front door saying, DEA, and coming into the residence. So it's a different situation than when you have someone who's protecting their drug stash from a would-be robber. So he knew it was law enforcement that was trying to enter, not, in quotes, robbers, in quotes. Correct. Absolutely, Your Honor. And I think the Court questioned my colleague about how high of a bar this is. I just want to point out that in Lemus, this Court said that the prejudice has to be so severe that it's more likely than not that the comment that was stricken materially affected the verdict. And, Judge Smith, you asked if there's any case that's on all fours, and the answer is no. There's not a single case cited by any of the parties in which a court of appeals held that a district court had abused its discretion when it struck testimony instead of declaring a mistrial. Can I ask, why did the government withdraw that Mr. Niering's, Agent Niering's, testimony? It's because it wasn't memorialized in any statement. But that happens all the time. It does, Your Honor, although I think our position is that it was different because it was the defendant's own statement. And under Rule 16, we believe that at least under principles of fairness and sort of the embodiment of Rule 16, that the defendant should have notice of their statement that it should have been stricken. And that's why we decided to move to strike it. We weren't acknowledging that it was false or perjured testimony. Agent Niering just remembered it differently than what the other agent had written down in a report from something that happened four years earlier. But we thought just out of a sense of fairness that it should have been stricken. Is your district a open file discovery district out of curiosity? It is not, Your Honor. We follow just traditional discovery practices under Brady, Rule 16, Jenks, and Giglio. If the court doesn't have any other questions, we would ask the court to affirm. Very well. We always welcome these types of presentations. Thank you. All right. So returning again to Ms. Landau, you've got some time left. You can concede yours as well if you want. It's up to you. Your Honor, I think I was a little bit on my prior presentation. Very well. Thank you both for your excellent presentations. We appreciate it. The case just argued of United States, Benson is submitted.
judges: SMITH, BUMATAY, Barker